**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JORDAN BROWN and KELLIE BROWN,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:25-546** |
| **v.** | : | **(JUDGE MANNION)** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is defendant State Farm Fire and Casualty Company's ("State Farm") motion for summary judgment. (**Doc. 13**). For the reasons stated herein, the motion will be **DENIED IN PART** with respect to the plaintiffs' breach of contract claim and **GRANTED IN PART** with respect to their bad faith claim.

## I. BACKGROUND

This action stems from a January 3, 2024, pipe blockage resulting in property damage to plaintiffs Jordan and Kellie Brown's ("the plaintiffs") home. (Doc. 1-3, ¶4).

According to the plaintiffs, on that date they heard a gurgling sound coming from their basement sink and contacted Matt Walters, a licensed plumber. (Doc. 13-15 at 5-7). Walters inspected the pipe, concluded that

there were two blockages from frozen sewage and water, which caused the pipe to burst, and completed the necessary repairs, charging $14,903.50. (Doc. 13-5).

A week later, on January 10, 2024, the plaintiffs submitted a claim to State Farm with the assistance of Schuylkill Public Adjusting Company. The public adjuster, Jarod Luscavage, forwarded Walters' invoice, report, and a weather report for the day of the loss. (Doc. 13-4). Luscavage sent follow up correspondence several times throughout the month of February, at times citing the Pennsylvania Unfair Claims Practices Act because of alleged lack of communication and prompt investigation by State Farm. (Doc. 1-3 at 88-92).

Finally, on March 4, 2024, State Farm sent a denial letter, notifying the plaintiffs of its conclusion that freezing was not the cause of the pipe damage. (Doc. 13-10). In response, Luscavage requested that State Farm's claim adjuster, David Moncavage, cite to the specific policy language that supported the denial. (Doc. 1-3 at 88-89). Over the following few months, Luscavage allegedly made several attempts at contacting Moncavage, asking for clarification regarding the denial, and noting his concerns about how it was handled and the delay in the decision. *Id.* at 88; *see also* (Doc. 18 at 5).

Eventually, on June 22, 2024, Moncavage forwarded a report from master plumber Joseph Pandalfo, dated March 1, 2024, which concluded that the pipe blockage was due to dirt and debris and failure to upkeep, not frozen waste or water. (Doc. 18 at 5); (Doc. 13-9).

Luscavage then retained David Walsavage, a civil engineer, who prepared a report dated December 18, 2024, finding that Walters' conclusion that the damage was due to frozen water and waste was reasonable, based on the fact that the pipe was a combined water and sewer system and that the roof drains flow into the pipe, meaning that water exposed to sub-freezing temperatures could have been entering the pipe. (Doc. 13-11). Luscavage forwarded this report to Moncavage. *See* (Doc. 13-13). Pandalfo then authored another report, dated January 22, 2025, again concluding that the damage was due to improper maintenance, not frozen materials. (Doc. 13-12). The next day, State Farm sent another letter notifying the plaintiffs that the damage was not covered under their insurance policy. (Doc. 13-13).

Shortly thereafter, the plaintiffs filed their complaint in the Court of Common Pleas of Schuylkill County. However, on March 26, 2025, State Farm removed the case to this court, pursuant to diversity jurisdiction under 28 U.S.C. §1332(a). (Doc. 1). The plaintiffs assert claims for breach of

contract and breach of the duty of good faith and fair dealing. (Doc. 1-3 at 6-7, ¶¶40-47).

Fact discovery closed on October 3, 2025. *See* (Doc. 10). Expert discovery closed on November 21, 2025. *Id.* During the course of litigation, State Farm also retained the services of meteorologist John Scala and licensed professional engineer Jason Besz, who together authored a report, dated October 31, 2025, concluding that the blockages and resulting damage were not due to weather. (Doc. 13-14).

On December 10, 2025, State Farm filed the instant motion for summary judgment as to both claims against it, as well as an accompanying brief in support. (Docs. 13, 15). On December 29, 2025, the plaintiffs filed their brief in opposition to the motion. (Doc. 18). Finally, on January 12, 2026, State Farm filed a reply brief to the brief in opposition. (Doc. 19). The motion is thus ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is [(1)] no genuine issue as to any material fact and [(2)] that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a motion for summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327

F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. The moving party's burden has recently been explained this way:

> In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case . . . *on which that party will bear the burden of proof at trial*." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. 2024).

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III. DISCUSSION

### a. Breach of contract

Under Pennsylvania law, the "necessary material facts that must be alleged for [a breach of contract] action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (citing *Hart v. Arnold*, 884 A.2d 316, 332 (Pa.Super.2005)). Moreover, in the insurance context, "it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy." *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) (internal citations omitted).

Here, the plaintiffs argue that under the insurance policy, State Farm was obligated to cover the cost of repairs in the event of damage resulting from a frozen pipe. Indeed, the policy provides that State Farm "will pay for accidental direct physical loss to the property," including "[f]reezing of a

plumbing . . . appliance." (Doc. 13-2 at 27-29). In support of their claim that the pipe burst due to freezing, the plaintiffs offer the reports of Matt Walters, a licensed plumber, who concluded that freezing was responsible for the pipe bursting, and David Walsavage, a civil engineer, who found that Walters' conclusion was reasonable. (Docs. 13-5, 13-11).

State Farm, on the other hand, argues that the loss was due to wear and tear and failure to upkeep on the part of the plaintiffs, which would not be covered under the policy, and that it could not have been due to freezing given the weather on and around the date in question. *See generally* (Doc. 15). In support of its argument, State Farm relies on the conclusions of master plumber Joseph Pandalfo, professional engineer Jason Besz, and meteorologist John Scala. (Docs. 13-9, 13-12, 13-14). Furthermore, State Farm asserts that the plaintiffs "have no evidence of direct physical loss or damage to the building from the pipe break below the slab, i.e.[,] water damage to the building, and they failed to make out a *prima facie* cause of action," requiring the court to grant summary judgment. (Doc. 13 at 11). State Farm cites the deposition testimony of plaintiff Jordan Brown, in which he stated that the burst pipe resulted in "minimal . . . an inch or two maybe" of water in the basement sink that it connected to. (Doc. 13-15 at 11). According to State Farm, the absence of legitimate water damage to the building means

that there was no "accidental direct physical loss to the property" as required by the insurance agreement. (Doc. 13-2 at 27). However, the plaintiffs assert that the burst pipe was itself the accidental direct physical loss.

Finally, State Farm argues that the "[p]laintiffs also failed to comply with the policy condition requiring them to exhibit the damaged property to State Farm." (Doc. 15 at 12-13) (citing Doc. 13-2 at 35 ("After a loss to which this insurance may apply, ***you*** must cooperate with ***us*** in the investigation of the claim and also see that the following duties are performed . . . as often as ***we*** reasonably require: (1) exhibit the damaged property" (emphasis in original))). According to State Farm, the plaintiffs' failure to exhibit prevented it "the opportunity to inspect" the property in violation of the policy, barring recovery. (Doc. 15 at 15). However, when the plaintiffs submitted their claims to State Farm, they forwarded photographs taken by Walters when he assessed the damage before making repairs. (Doc. 13-4). Further, State Farm had a master plumber, Pandalfo, inspect the pipe after the fact, examine Walters' photographs and invoice, and write a report on the cause of the damage. (Doc. 13-9).

Assessing these arguments, it is clear that there exist genuine issues of material fact. A jury could reasonably conclude—based on the insurance policy covering pipe damage due to freezing—that the burst pipe was a direct

accidental physical loss as required by the policy and that it resulted from freezing. Furthermore, whether or not the plaintiffs failed to exhibit the loss as required by the policy is a disputed issue best left for a factfinder. Accordingly, State Farm's motion for summary judgment with respect to the plaintiffs' breach of contract claim will be denied.

**b. Breach of duty of good faith and fair dealing**

A bad faith claim under 42 Pa.C.S. §8371 requires the plaintiffs to show by clear and convincing evidence that the insurer: (1) did not have a reasonable basis for denying benefits under the policy and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (1994)). The Third Circuit has described "the essence of a bad faith claim" as "the unreasonable and intentional (or reckless) denial of benefits." *Id.* (quoting *UPMC Health Sys. v. Metro. Life. Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)). "Bad faith" in this context means:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing),

through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)); *see also Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012) ("[M]ere negligence or bad judgment does not constitute bad faith; knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary") (citation omitted). As such, "an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Fogel*, 656 F.3d at 179 (citing *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)). Moreover, an insurer is not required to show that "the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion"; rather, an insurer need only show "it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Cronin v. State Farm Mut. Auto. Ins. Co.*, No. 3:06-CV-1081, 2008 WL 11503863, at *3 (M.D. Pa. May 8, 2008) (quoting *Mann v. UNUM Life Ins. Co. of Am.*, No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003)); *see also Luse v. Liberty Mut. Fire Ins. Co.*, 411 F. App'x 462, 465 (3d Cir. 2011) ("an insurer may defeat a bad faith claim by showing that it conducted a review

or investigation sufficiently thorough to yield a reasonable foundation for its action").

A plaintiff's burden of proof in a bad faith insurance case is significant; it requires evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Id.* (citation omitted). "[T]he plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Post*, 691 F.3d at 523 (citation omitted).

Here, the plaintiffs have failed to sustain their burden. They assert that State Farm "exhibited ongoing, repeated, and constant patterns of delay, and that, in and of itself, is enough to present to the jury the Bad Faith count." (Doc. 18 at 17). However, such a conclusion distorts the relevant standard. As stated above, the plaintiffs must show by clear and convincing evidence that the insurer: (1) did not have a reasonable basis for denying benefits under the policy and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim. *Amica Mut. Ins. Co.*, 656 F.3d at 179. It is clear that State Farm had a reasonable basis for denying the claim, regardless of whether its denial was the correct decision.

Following the plaintiffs' claim submission, State Farm investigated the claim. Pursuant to its investigation, State Farm hired master plumber Pandalfo to investigate the cause of pipe damage and to review Walters' report. Pandalfo concluded that the damage to the pipe was due to wear and tear and failure to upkeep, not freezing. (Doc. 13-9). Pandalfo's conclusion, in conjunction with the policy not providing coverage where damage to a pipe results from wear and tear and failure to upkeep, provided a reasonable basis to deny the claim. Any delays in State Farm's processing of the claim do not undermine the simple fact that a reasonable basis existed. Accordingly, the bad faith claim fails.

## IV. CONCLUSION

For the foregoing reasons, State Farm's motion will be **DENIED IN PART** with respect to the plaintiffs' breach of contract claim and **GRANTED IN PART** with respect to their bad faith claim. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/26/26
25-546-01